UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STARLEEN CLINE, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:13-CV-1090-B |
| § | |
| CARNIVAL CORPORATION d/b/a § | |
| CARNIVAL CRUISE LINES, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Defendant Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival") moves to dismiss, or alternatively, transfer this case to a federal district court in Florida in light of the forum selection clause found in Carnival's passenger ticket contracts with Plaintiffs. Because it finds that Plaintiffs fail to (1) satisfy their "heavy" burden of showing that the forum selection clause is invalid and (2) establish that these are the sort of "extraordinary circumstances" weighing against transfer under 28 U.S.C. § 1404(a), the Court **GRANTS IN PART** Carnival's Motions (docs. 9, 11, 13, 15, 17, 19) to the extent they seek a transfer of venue for Plaintiffs' claims pursuant to 28 U.S.C. § 1404(a). The Court **DENIES IN PART** Carnival's Motions (docs. 9, 11, 13, 15, 17, 19) to the extent they seek dismissal pursuant to Rule 12(b)(3) and a transfer pursuant to 28 U.S.C. § 1406(a). Further, the Court **ORDERS** that Plaintiffs' claims be transferred to the U.S. District Court for the Southern District of Florida, Miami Division, for resolution of all further matters in this case.

- 1 -

# I.

# BACKGROUND

Plaintiffs, passengers aboard the *Carnival Triumph* (the "*Triumph*") that left port from Galveston, Texas on February 7, 2013, brought this action against Carnival to recover for the "unsafe, unsanitary, and unreasonable living conditions" they had to endure over a five-day period after an engine room fire caused the *Triumph* to lose power on February 10, 2013. (Am. Compl., Doc. 8, § III ¶¶ 1-3.) Carnival had allegedly "encountered related safety issues with" the *Triumph* in "the weeks leading up to" Plaintiffs' voyage, but proceeded with the voyage anyway, without warning passengers or taking adequate precautions. (*Id.* § III ¶11; §§ IV, VI-VIII.) In their Amended Complaint filed May 6, 2013, Plaintiffs assert five causes of action, including negligence, breach of maritime contract, negligent misrepresentation, fraud by non-disclosure, and fraud.

Carnival now seeks to dismiss or transfer Plaintiffs' claims based on the forum selection clause set forth in paragraph 12(c) of Carnival's passenger ticket contract ("Ticket Contract"), which reads:

> [I]t is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to or from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dad County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

(*See, e.g.*, Brief Supp. Mot. Dismiss or Transfer Venue for Cline Group ("Def.'s Mot.") at 5, Doc. 10.)[1] The Ticket Contract also advised Plaintiffs, in bold and capital letters at the top of the document, that its terms were legally binding, and specifically directed passengers to the clauses in

---

[1] For ease of reference, the Court cites Carnival's brief in support of its motion to dismiss/transfer the Cline Group's claims (doc. 10) where the facts referenced are applicable to all six groups of plaintiffs.

the Ticket Contract limiting their rights to file suit, including the forum selection clause in paragraph 12.[2] The Ticket Contract further instructed passengers that "[t]he acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this Passage Contract." (*Id.* at 6.)

Carnival presents evidence showing that each plaintiff acknowledged receipt of the Ticket Contract, and accepted its terms and conditions, prior to boarding the *Triumph*. Most plaintiffs did so through Carnival's Online Check-In system, which allows passengers to obtain a boarding pass after completing several sections of information, including "information related to the [Ticket Contract's] terms and conditions." (*Id.* at 4.) These passengers had to "acknowledge receipt of the [Ticket Contract] and accept the terms and conditions" in order to receive a boarding pass through the Online Check-In system, which all but one group of plaintiffs did before boarding the *Triumph*. (*Id.*) The one remaining group of plaintiffs, deemed the "Tanner Group," had an opportunity to review the Ticket Contract on Carnival's website, but did not use the Online Check-In system, so instead acknowledged receipt of the Ticket Contract at the pier on February 7, 2013 before being allowed to board the *Triumph*. (Brief Supp. Mot. Dismiss or Transfer Venue for Tanner Group at 5,

---

[2] The top of the Ticket Contract (Def.'s Mot. 5) reads in bold and capital letters:

**IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.**

**NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 10 THROUGH 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.**

Doc. 18.)

Relying on the Ticket Contract's forum selection clause, Carnival filed these six pending motions to dismiss, or alternatively, transfer venue on May 28, 2013 (docs. 9, 11, 13, 15, 17, 19) ("Carnival's Motions"), which separate the twenty-eight plaintiffs into six groups based on similar booking facts. (Not. Grouping, Doc. 21.) All six motions first seek dismissal without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(3) for "improper venue." Alternatively, Carnival's Motions ask the Court to transfer Plaintiffs' claims to the U.S. District Court for the Southern District of Florida, Miami Division, under 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1404(a).

In response to Carnival's Motions, Plaintiffs filed a Motion for Jurisdictional Discovery on June 19, 2013 (doc. 25), which the Court denied on November 4, 2013 (doc. 36) following a hearing on the matter. With the issue of jurisdictional discovery decided, briefing on Carnival's Motions re-commenced on November 14, 2013 when Plaintiffs filed a single response to all six motions (doc. 39). Carnival replied on November 27, 2013 (doc. 40), and then filed a supplemental reply on December 11, 2013 (doc. 43) following the Supreme Court's decision in *Atlantic Marine Construction Co., Inc. v. U.S. Dist. Ct. for the W.D. of Tex.*, 134 S. Ct. 568 (decided Dec. 3, 2013). Plaintiffs responded to this supplemental reply on December 17, 2013 (doc. 44). With the parties having thoroughly briefed this matter, Carnival's Motions are now ripe for resolution.

## II.

## ANALYSIS

Carnival's Motions seek dismissal or transfer of Plaintiffs' claims to a federal district court in Florida based on the Ticket Contract's forum selection clause. In accordance with the Supreme Court's opinion in *Atlantic Marine Construction Co., Inc. v. U.S. Dist. Ct. for the W.D. of Tex.*, 134 S.

Ct. 568 (2013), the Court must first determine whether the forum selection clause is valid and enforceable under applicable contract law, and assuming it is, the Court must next evaluate whether to enforce the clause under *Atlantic Marine*'s analytical framework.[3]

### A. Enforceability of Forum Selection Clause

An initial dispute to resolve is whether the forum selection clause in each Plaintiffs' Ticket Contract is valid and enforceable. Since "this is a case in admiralty, federal law governs whether the forum selection clause in [the Ticket Contract] is enforceable." *Calix-Chacon v. Global Intern, Marine, Inc.*, 493 F.3d 507, 510 (5th Cir. 2007).

As established by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), federal law dictates "that in maritime actions forum selection clauses are to be enforced unless the forum selection clause is fundamentally unfair and therefore unreasonable." *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d 507, 511 (2007) (summarizing *Bremen*). A forum selection clause is "unreasonable" if the party seeking to set the forum selection clause aside shows that:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overeaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997), which cites *Carnival*

---

[3] Before *Atlantic Marine*, the "less-than-clear jurisprudence" in this area suggested a different analytical framework in which the issues of enforceability and whether to enforce under the applicable procedural rule overlapped. *LeBlanc v. C.R. England, Inc.*, 2013 WL 4463366, at *4 (N.D. Tex. Aug. 13, 2013). But since *Atlantic Marine* provided a straightforward analysis for the latter of these two issues while assuming the forum selection clause was enforceable, the Court proceeds by examining enforceability as a separate and distinct issue before turning to the analysis set out in *Atlantic Marine*.

*Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), and *Breman*, 407 U.S. at 12-13).

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Supreme Court applied (and extended) the "*Bremen* analysis" to the "cruise ship passage contract ticke[t]" context. *Calix-Chacon*, 493 F.3d at 511-12 (summarizing *Shute*). Disagreeing with the lower court's application of *Bremen*, the Court held that the forum selection clause was not unreasonable "simply because it is not the subject of bargaining." *Shute*, 499 U.S. at 594. The Court also found that the clause was not fundamentally unfair because "there is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims." *Id.* at 595. *Shute* further pointed out that the plaintiffs provided "no evidence" of the clause being "obtained . . . by fraud or ovverreaching" and that plaintiffs "conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity." *Id.*

This case resembles *Shute* in several respects. First, the forum selection clause in this case, and its surrounding provisions, are nearly identical to language approved by the Supreme Court in *Shute*. Like in that case, the language of the forum selection clause, and the Ticket Contract's terms impressing the importance of provisions such as the forum selection clause, "reasonably communicate" the clause "to [Carnival's] passengers."[4] Second, Carnival established—and Plaintiffs did not dispute—that, at a minimum, each plaintiff acknowledged receipt of the Ticket Contract

---

[4] *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 46 (2d Cir. 1990) (holding, in the context of a provision setting a limitations period on claims, that "sea carriers [must] reasonably communicate [relevant contractual terms] to their passengers"); *see also Tone v. Carnival Cruise Lines, Inc.*, No. CIV. A. 93-3747, 1993 WL 437650, at *2 (E.D. Pa. Oct. 28, 1993) ("To be legally sufficient, the [forum selection clause] must meet a 'practical standard of reasonable communicativeness.'") (quoting *Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905, 910 (3d Cir.1988)).

before boarding the *Triumph* and being given a reasonable opportunity to review its provisions. And since Plaintiffs thereafter accepted passage on the *Triumph*, they are bound under federal law by the terms of the Ticket Contract regardless of whether they read and signed it.[5] Third, Carnival also showed that, like in *Shute*, Plaintiffs "retained the option of rejecting the contract with impunity" as Carnival's cancellation policy allowed for a complete refund. (*See* Def.'s Mot. 15.) Fourth, the forum selection clause, like the one in *Shute*, is not fundamentally unfair because there is no indication that the clause itself is intended to discourage legitimate claims by requiring that they be filed in Florida where Carnival is based. Finally, the forum selection clause is not unreasonable simply because it was not explicitly negotiated. While Plaintiffs emphasize throughout their filings that the forum selection clause was not a product of negotiations between the parties (Am. Compl. § II, ¶ 5; Resp. 10; Suppl. Resp. 2.), this Court, like "the Supreme Court" and Fifth Circuit before it, finds this argument to be an insufficient basis for setting aside the forum selection clause. *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 520 (5th Cir. 2006) (citing *Shute*)).

Faced with these types of similarities to *Shute*, other courts in the Fifth Circuit have found forum selection clauses like the one in this case to be enforceable.[6] Nevertheless, the Court may set aside the forum selection clause if Plaintiffs are able to show that enforcement in these particular

---

[5] As another court noted, "courts have uniformly held that passengers are bound by provisions printed on a ticket, even though the passenger did not actually read those provisions . . . [before] accept[ing] passage on the ship." *Harden v. Am. Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) (citing cases).

[6] *See, e.g., Bowling v. Carnival Corp.*, No. G-08-0250, 2009 WL 890454 (S.D. Tex. Mar. 30, 2009); *Lunday v. Carnival Corp. d/b/a Carnival Cruise Lines, Inc.*, 431 F. Supp. 2d 691, (S.D. Tex. 2004); *Momin v. Carnival Cruis Lins, Inc.*, No. H-06-2806, 2006 WL 3741924 (S.D. Tex. Dec. 18, 2006); *Williams v. M/V Jubilee*, 431 F. Supp. 2d 677 (S.D. Tex. 2003); *Elliot v. Carnival Cruise Lines*, 231 F. Supp. 2d 555 (S.D. Tex. 2002).

circumstances would be unreasonable under one of the four bases set forth by the *Bremen* analysis, discussed above.[7] Plaintiffs offer two grounds for arguing that the clause is unreasonable. Neither, however, satisfies the "heavy" burden Plaintiffs must carry in these circumstances. *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997).

First, Plaintiffs submit that the forum selection clause was a product of fraud or overreaching because Carnival "knew that the Vessel in question was not sufficiently seaworthy to be able to provide Plaintiffs a safe, sanitary, and enjoyable voyage," and did not disclose this information to Plaintiffs before having them agree to the non-negotiated forum selection clause. (Am. Compl. § II, ¶ 5; Resp. 15-16.) But this argument confuses fraud as a cause of action with fraud in the forum selection clause context. Fraud or overreaching under the *Bremen* analysis "'does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud the clause is unenforceable. Rather, it means that . . . [a] forum-selection clause in a contract is not enforceable if *the inclusion of that clause in the contract* was the product of fraud or coercion.'" *Haynsworth*, 121 F.3d at 963 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)) (ellipses omitted) (emphasis in original). Thus, "the claims of fraud or overreaching must be aimed straight at the [forum selection] clause in order to succeed." *Id.* Here, the allegations Plaintiffs rely on go toward establishing their fraud and fraud by non-disclosure claims. These allegations bear no relation to the forum selection clause—that Carnival allegedly knew of mechanical issues on the *Triumph* before setting sail has nothing to do with the fully-disclosed clause in the Ticket Contract requiring

---

[7] *See, e.g.*, *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135 (N.D. Cal. 2000) (setting aside a similar forum selection clause after plaintiffs showed "that their physical and financial inability to travel to Florida, combined with the strong national interest in promoting civil rights under the [Americans with Disabilities Act], requires the action to proceed in [the original] forum").

Plaintiffs to file suit in Florida.

Second, without pointing to any particular exception under the *Bremen* analysis, Plaintiffs also argue that the forum selection clause should be set aside as unfair and unreasonable in light of Plaintiffs' lack of bargaining power, Carnival's alleged knowledge of the *Triumph*'s mechanical issues, and the fact that 3000 passengers, most of whom are presumably from Texas, were affected by Carnival's actions and should not be required to travel to Florida. (Am. Compl. § II, ¶ 5; Resp. 15-16.) But Plaintiffs cite no cases to support the proposition that this Court can set aside a forum selection clause mirroring the one approved in *Shute* based on these circumstances. While this case may differ from *Shute* in that more than one passenger was affected by Carnival's actions, there is no evidence that the twenty-eight passengers who actually chose to sue Carnival in this forum "will for all practical purposes be deprived of his day in court" if forced to litigate in Florida. *Calix-Chacon*, 493 F.3d at 511 (quotation omitted). And without any apparent authority to set aside the forum selection clause on this basis, the Court must conclude that the forum selection clause is enforceable.

In sum, the Court finds that these circumstances are substantively indistinguishable from *Shute*, and thus, enforcement of the forum selection clause would not be unreasonable. Accordingly, the Court concludes that the forum selection clause is valid and enforceable under federal law.

   B.  *Enforcing Forum Selection Clause Through Venue-Related Procedural Rules*

Having determined the forum selection clause is valid and enforceable, the Court must next consider the appropriate procedural rules through which the clause may be enforced. Defendants first argue for enforcement under Rule 12(b)(3), which authorizes the Court to dismiss a claim for "improper venue." FED. R. CIV. P. 12(b)(3). Alternatively, Defendants ask the Court to transfer Plaintiffs' claims to the a federal court in Florida under 28 U.S.C. § 1406(a), authorizing transfer of

claims filed in the "wrong" venue,[8] and/or 28 U.S.C. § 1404(a), which authorizes a venue transfer under the doctrine of *forum non conveniens.*

Plaintiffs argue in response that § 1404(a)'s balancing test is the applicable rule in these circumstances, that a forum selection clause is just one consideration in this balancing test, and that the relevant factors weigh against transferring this case. While the Court agrees that § 1404(a) is the applicable rule, it disagrees with the standard Plaintiffs ask the Court to apply. Applying the appropriate standard, the Court finds transfer warranted in these circumstances.

First, the Supreme Court recently clarified that a forum-selection clause pointing to a particular federal forum generally "may be enforced by a motion to transfer under § 1404(a)." *Atlantic Marine*, 134 S. Ct. at 575. In holding that Rule 12(b)(3) and § 1406(a) are not the appropriate mechanisms of enforcement, the Court explained that these rules pre-conditionally require that venue is "wrong" or "improper" as defined by "federal venue laws," which "say nothing about a forum-selection clause." *Id.* at 577. Thus, the Court held that a forum selection clause may instead "be enforced through a motion to transfer under § 1404," which "does not condition transfer on the initial forum's being 'wrong,'" and "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Id.* at 579.

Here, venue is only disputed as "wrong" or "improper" in light of the forum selection clause, making § 1404(a) the proper mechanism of enforcement. Plaintiffs show, and Carnival does not refute, that venue is generally proper in this admiralty case, because this Court has personal

---

[8] 28 U.S.C. § 1406(a) provides that when a case is filed in the "wrong" venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any [venue] in which it could have been brought."

jurisdiction over Carnival.[9] Thus, since venue is not "wrong" or "improper" here as defined by Rule 12(b)(3) and 28 U.S.C. § 1406(a), *Atlantic Marine* counsels that only § 1404(a), which does not carry such preconditions, may be used to enforce the forum selection clause.[10] As such, the Court **DENIES IN PART** Carnival's Motions to the extent they seek dismissal pursuant to Rule 12(b)(3) and transfer pursuant to 28 U.S.C. § 1406(a).

Second, having determined that only 28 U.S.C. § 1404(a) applies here, the Court must next consider the applicable standard in these circumstances. Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other [venue] where it might have been brought or to any [venue] to which all parties have consented." 28 U.S.C. § 1404(a). Normally, § 1404(a) requires a court to "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote the 'interest of justice." *Atlantic Marine*, 134 S. Ct. at 581. Pointing to *Stewart Organization, Inc. v. Ricoh Corporation*, 108 S. Ct. 2239 (1988), Plaintiffs argue that the forum selection clause is just one factor to consider in this test, but that the other relevant considerations counsel against transferring the case. But while the majority in *Stewart* stated in

---

[9] *See In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. 1981) ("The regular venue provisions of 28 U.S.C. ss 1391-93 are inapplicable in admiralty cases. Instead, the general admiralty practice prevails, in which venue and personal jurisdiction analyses merge. If the action is in personam, venue lies wherever valid service could have been made upon the defendant corporations.").

[10] Though Defendants seem to argue that *Shute* and *Bremen* allow for dismissal since this is an admiralty case (Def.'s Suppl. Reply 1-2), those cases left the procedural rules in this context unclear while explicitly focusing on the enforceability of forum selection clauses under federal contract law. *Atlantic Marine*, on the other hand, cleared up the uncertainty regarding what procedural rule applies while assuming the forum selection clause at issue was enforceable. *See Martinez v. Bloomberg LP*, No. 12-3654-CV, 2014 WL 114252, at *3 (2d Cir. Jan. 14, 2014) (noting how *Atlantic Marine* "resolved" past "uncertainty" regarding the proper "procedural mechanism for enforcing a forum selection clause through a motion to dismiss").

passing that a forum selection clause should not be given "dispositive consideration" in the § 1404(a) balancing test,[11] *Atlantic Marine* later clarified that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 134 S. Ct. at 579 (quoting *Stewart*, 108 S. Ct. at 2239 (Kennedy, J., concurring)).

More precisely, *Atlantic Marine* held that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 581. "First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before the dispute arises" through the forum selection clause agreement. *Id.* at 581-82. Second, "arguments about the parties' private interests" must not be considered, since by agreeing to the forum selection clause, the parties effectively "waive the right to challenge" any private inconvenience the "preselected forum" may create. *Id.* at 582. Accordingly, only "arguments about public-interest factors" may be considered when deciding whether to transfer under § 1404(a) to the contractually-specified venue. *Id.* at 582. The third adjustment delineated by the Supreme Court is that "a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 582. In conclusion, the Court summarized that "the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor transfer." *Id.* at 583.

---

[11] *See Stewart*, 108 S. Ct. at 2245 ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a)."). *Atlantic Marine* can be read as clarifying the consideration that "Congress provided" for in § 1404(a).

Third, applying the standard the Supreme Court set out in *Atlantic Marine* to the facts in this case, the Court finds that Plaintiffs failed to show that the public-interest factors overwhelmingly disfavor transfer. While Plaintiffs argue at length that the private-interest factors and their choice of this forum weigh against transfer, *Atlantic Marine* dictates that the Court may only consider arguments related to the public-interest factors in these circumstances. The public-interest factors include: "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (brackets omitted).

Here, the only public-interest factor Plaintiffs address is the second factor, arguing in support that "it is appropriate for the community in the Northern District of Texas to serve as jurors because all Plaintiffs reside and work in this District and Defendant does business here." (Resp. 10.) Plaintiffs further submit in their supplemental response that "the local interest in having localized interests decided at home overwhelmingly favor Texas, where Defendant made safety decisions about the Vessel, and where the Vessel was docked, maintained, and carried Texas passengers. Upon information and belief, the vast majority of Defendant's customers for this Vessel were Texas residents, not Florida residents." (Pl.'s Suppl. Resp. 2.) Even if these facts show that this single factor weighs in Plaintiffs' favor, the Court would still be left to conclude that all other relevant factors weigh in favor of transfer. *See Atlantic Marine*, 134 S. Ct. at 582 ("A court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum" and place the burden on the party who filed outside the agreed-upon forum to establish the public-interest factors). Further, these facts are typical of many cases and far from the "extraordinary circumstances" *Atlantic Marine* had in mind.

Thus, since this is not one of those "most unusual cases" where the public interest overwhelmingly disfavors transfer, the Court finds that "'the interest of justice,'" as defined in § 1404(a), "is served by holding [Plaintiffs] to their bargain" via a transfer to the parties' agreed-upon forum. *Id.* at 583.

In conclusion, the Court finds that Plaintiffs failed to meet the burden § 1404(a) places on them in these circumstances. As such, the Court **GRANTS** Carnival's Motions to transfer pursuant to 28 U.S.C. § 1404(a), and **ORDERS** that this case be transferred to the parties' contractually-specified forum: the U.S. District Court for the Souther District of Florida, Miami Division.

### III.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Carnival's Motions (docs. 9, 11, 13, 15, 17, 19) in so far as they seek to transfer venue for Plaintiffs' claims pursuant to 28 U.S.C. § 1404(a). Carnival's Motions (docs. 9, 11, 13, 15, 17, 19) are **DENIED IN PART** to the extent they seek dismissal pursuant to Rule 12(b)(3) and transfer pursuant to 28 U.S.C. § 1406(a). In accordance with Carnival's § 1404(a) Motion to transfer, and the valid and enforceable forum selection clause in the Ticket Contract, the Court **ORDERS** Plaintiffs' claims transferred to the U.S. District Court for the Southern District of Florida, Miami Division, for all further proceedings.

SO ORDERED.
SIGNED: February 12, 2014.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE